WOOD and others *vs.* MATHER.

A trust to pay the rents and profits to J. during her life, and after her death to convey to such of her children as should survive her, contained in a deed of bargain and sale made previous to the revised statutes, was not executed as a legal estate in the *cestuis qae trust* by the law of uses then in force.

By such a trust the children of J. during her life took vested equitable estates in remainder subject to be defeated, wholly, by their dying before her; or, in part, by the coming *in esse* of after-born children of J.

The revised statutes, subsequently enacted, did not turn these equitable estates into legal ones during the life of J.

In trusts of real estate, created before the revised statutes, the legal title of the trustee, on his death happening after the revised statutes, descends to his heirs. The revised statutes cutting off descent, in case of trustees are to be construed prospectively.

Proceedings for transferring the title of infant *trustees* under the revised statutes (article concerning the sale of infants' estates) are not affected by the 176th section of the article. That section applies only to the sale of infants' estates *held in their own right*.

Section 65, 1 R. S. 730, making void any sale or act by a trustee in contravention of the trust expressed in the trust deed, applies only to the acts of *trustees*, and does not divest courts of equity of their power over the legal title when vested in infant trustees.

Wood v. Mather.

Courts of equity have inherent jurisdiction, independently of statute, to order a sale of the *equitable* estates of infants.

The statute of New York, providing for the sale &c. of the real estate of infants by chancery, apply only to cases in which the *legal* title is in the infants.

In a proceeding in equity for the sale of the equitable estates of infants in land, such equitable estates may be transferred from the infants by a written contract of sale, or by a parol contract of sale followed by payment, possession, and improvements made by the purchaser, where the sale was made by the guardian of the infants under the sanction of the court.

The equitable title thus acquired constitutes a good defense for the purchaser, in an action of ejectment, when properly set up in his answer, as against the infants after they have arrived at full age.

An adult co-tenant who joins in a petition praying a court of equity to order a sale of the land held by the adult and infant in co-tenancy, is bound by the order made pursuant to his request.

APPEAL from a judgment entered upon the report of a referee, in an action to recover the possession of real property.

On the 7th of December, 1827, the premises in question, with other lands situated in Rochester, were conveyed to Ira West and his heirs, by deed of bargain and sale, in trust to pay Judith Wood during her natural life the income, rents and profits to arise from the land conveyed, and after her death to grant, release and convey the same land to her children surviving her and to the children of such of her children as might die before her; the grandchildren to take such interest in the land as their parent would have taken if living.

At the execution of the deed Judith Wood had three children, named Morris Wood, Samson Wood and Obadiah C. Wood. Morris Wood died in 1833, leaving two minor children, Lewis and Catherine. In 1832 the trustee, Ira West, died, leaving children who were infants. In 1835 Judith Wood, Samson Wood, and Obadiah C. Wood, who were of full age, together with the widow of Ira West as guardian of his children, presented a petition to the court of chancery before the vice chancellor of the eighth circuit, stating the foregoing facts, and alleging, among other things, that upon the death of the trustee, Ira West, the

Wood *v.* Mather.

legal title to the land descended to his children who were infants, unable to execute the trust; that Lewis Wood and Catherine Wood, children of Morris Wood, deceased, were infants; that it would be advantageous to all persons interested in the land that the same be sold, and praying that the same might be sold as the court should direct; that a guardian might be appointed for the infants Lewis Wood and Catherine Wood for such sale, and a guardian also appointed for the infant children of Ira West for such sale; and that the infant children of Ira West, through their guardian thus appointed, might execute and deliver to the purchaser a deed of the land. After a reference to and report from a master, the court appointed a guardian for the children of Morris Wood, and a guardian for the children of Ira West, and ordered the land to be sold by the guardian for the children of Morris Wood. This guardian thereupon contracted with Joseph Strong to sell and convey to him the land for $1800—$1000 to be paid down, and the balance to be secured by his bond and mortgage on the premises, payble to the clerk of the court—and reported the agreement of sale to the court. The court confirmed the report, and ordered the infant children of Ira West by their guardian to execute a deed of the land to the purchaser, Strong. The deed was accordingly executed and delivered, and Strong paid the consideration as agreed, and entered into possession. The title thus acquired by Strong was conveyed to the defendant, who entered into possession and made valuable improvements thereon in good faith before this action was commenced. The consideration paid by Strong on his purchase was by order of the court in that proceeding invested and secured for the benefit of the parties beneficially interested in the trust deed of 1827, and in the same proportions. Judith Wood died in 1852, leaving no other children or grandchildren than those above named. After her death this action was commenced by Samson Wood, Obadiah C. Wood, Lewis Wood, and Catherine Anderson (formerly Wood) to recover

possession of the land so sold to Strong and from him to the defendant, who was in possession. The complaint was in the usual form to recover the possession of real property. The answer, in addition to the usual denial, set up the foregoing facts as an equitable defense. Lewis Wood stipulated to admit the defendant's title.

The issues were referred for trial to H. R. Selden, Esq., who found as conclusions of law that the deed to Joseph Strong was void as against the then infants Lewis Wood and Catherine Wood, (now Catherine Anderson,) on the ground that the title of the trustee, Ira West, on his death, could not, under the revised statutes, descend to his children, who through their guardian executed the deed to Strong; that Lewis Wood, however, was estopped by his stipulation from disputing the defendant's title; that Samson Wood and Obadiah C. Wood were also estopped from disputing the defendant's title, by reason of having petitioned the court of chancery for the sale of the land; but that Catherine Anderson, on the death of Judith Wood, became entitled to one undivided sixth part of the land in question, and should recover the same of the defendant.

The defendant appealed, as to so much of the judgment as was against him, and two of the plaintiffs, Obadiah C. Wood, and Lewis Wood, appealed as to so much of the judgment as was against them.

*By the Court,* JAMES C. SMITH, J. The principal question presented by the defendant's appeal, which I propose first to consider, is whether the proceedings had in the court of chancery, for a sale of the premises in question, vested the purchaser, Joseph Strong, with any title or right of which the defendant, as his grantee, can avail himself under his answer in this action as defense, either legal or equitable, to the claim of Mrs. Anderson.

No question is made by either of the parties but that the deed to Ira West, which was executed in 1827, created a valid

trust. And I understand all parties to assent to the construction of that instrument contended for by the defendant, that it vested the legal title to the premises in West as trustee, and an equitable estate in Judith Wood for life, remainder to her children then living, subject to be defeated wholly by their dying before her, or in part by the coming *in esse* of after-born children of Judith. This construction is undoubtedly correct. (*Hill on Trustees*, 232, 242. 1 *Mad. Ch.* 449. 4 *Kent*, 304, 305. 20 *Wend.* 374.) Had there been like limitations without the intervention of a trustee, the children of Judith would have taken vested *legal* estates in remainder, subject to be defeated wholly or in part by the same contingencies. (7 *Paige*, 544. 8 *id.* 307.)

It is also doubtless true, as was said by the referee in his opinion, and as seems to have been held by the vice chancellor in the proceedings had before him for a sale of these lands in 1835, that the legal estate thus created in the trustee did not vest in the *cestui que trust* by the operation of the revised statutes, (1 *R. S.* 727, § 47,) at least, so far as the life interest of Mrs. Wood is concerned. In regard to the beneficial interests of the plaintiffs, the referee expressed a doubt whether they were not turned into legal estates, in remainder, by the operation of the statute; but he forbore to decide that question, and disposed of the case upon the assumption that the entire legal estate remained in the trustee until his death, in 1832.

I am of the opinion that the position thus assumed by the referee is correct, not only for the reason suggested by him, that the grantors designed that the legal estate should not vest in the children of Mrs. Wood until after death, but also for the reason that the case is not within section 47 above cited, by which certain trusts are turned into legal estates. Section 48 provides that " the last preceding section shall not divest the estate of any trustees in any existing trust, when the title of such trustees is not merely nominal, but is connected with some *power of actual disposition or*

*management*, in relation to the lands which are the subject of the trust." This exception seems clearly to apply to the estate of the trustee in this case, as he was empowered not only to pay the rents and profits to Mrs. Wood during her life, but also to convey the lands after her death. Besides, during the lifetime of Mrs. Wood, her children were neither "entitled to the actual possession," nor to "the receipt of the rents and profits" of the land; and both must concur before the beneficial interest of the party is turned into a legal estate. (§ 47. 2 *Hill*, 574.) But the referee held that upon the death of Ira West the trust estate did not descend to his heirs, but vested in the court of chancery, under the provisions of section 68, (1 *R. S.* 730,) and that therefore the infant children of Ira West, who alone conveyed, by their guardian, to Joseph Strong, had no interest whatever to convey, and their deed, by its own operation, gave no title to the grantee. The correctness of this conclusion depends upon whether the referee is right in his opinion that section 68, above cited, applies as well to trusts created prior to its enactment as to those created subsequently thereto. The section is contained in the chapter of the revised statutes entitled, "Of real property, and of the nature, qualities and alienation of estates therein." Section 11 of the fifth title of the same chapter is as follows: "None of the provisions of this chapter, except those converting formal trusts into legal estates, shall be construed as altering or impairing any *vested estate*, interest or right, or as altering or affecting the construction of any deed, will or other instrument, which shall have taken effect at any time before this chapter shall be in force as a law." That this section embraces *trust* estates, is apparent from the fact that one species of trusts is expressly excepted from its operation. If section 68 does not apply to the trust created by the deed to West, then, by the law as it stood before the revised statutes, the legal estate of the trustee, on his death, descended to his heirs. (5 *Paige*, 561.) Not only was it descendible, but in case of Mrs.

Wood surviving all her children and grandchildren, the trustee or his heirs would have had a right, on her death, to hold the estate discharged of the trust. (*Hill on Trustees*, 270, 271, *and cases there cited.*) Before the revised statutes, the trust did not escheat on the death of the *cestui que trust* intestate, and without heirs, for he was not "seised." (1 *R. L.* 389, § 2. 3 *Cruise's Dig., Escheat*, §§ 28, 29.) And the provisions of the revised statutes relating to escheats, (1 *R. S.* 718, §§ 1, 2,) even if they alter the law in this respect, which I am not prepared to hold, are also controlled by section 11 above referred to, and do not affect estates or rights vested before those provisions took effect.

Independently of the express provisions of said section 11, the well established and familiar rule that laws which tend to take away vested rights of property are void, and the courts will therefore always struggle to give statutes a prospective interpretation, seems to demand that section 68, above referred to, be so construed as not to take away or impair the vested rights of the trustee.

The only case cited by the referee in support of his opinion as to the effect to be given to section 68, is *Hawley* v. *Ross*, (7 *Paige*, 103.) But it is to be observed in regard to that case, (1.) That the remarks of the chancellor on this point are *obiter*, he having decided the case on another ground; (2.) It does not appear that his attention was called to section 11, above referred to; and (3.) The case before him related to *personal* estate only, to which species of property the rule above referred to, which permits the trustee to hold the estate discharged of the trust in certain cases, does not apply. (*Hill on Trustees*, 271.) I am not aware of any other adjudication sustaining the opinion of the referee upon this question, and I have therefore felt at liberty to consider it as *res nova.*

On the other hand, Vice Chancellor Gardiner, who ordered the conveyance of the interests of the children of Ira West, must be regarded as having adjudged, in that proceeding, that

on the death of West, the legal estate descended to his heirs, as otherwise they had nothing to convey.

If, then, the legal title descended to the heirs of Ira West, it passed by their deed to Joseph Strong, unless that instrument is absolutely void for want of jurisdiction in the court of chancery to authorize the sale.

It is claimed on the part of the plaintiffs, that the deed is in contravention of the provision contained in the article of the revised statutes relating to proceedings for the sale of infants' estates, which prohibits the sale or other disposition of real estate " against the provisions of any last will, or of any conveyance, by which such estate or term was devised or granted to such infant." (2 *R. S.* 195, § 176.) But that provision does not apply to this case.    (1.) It relates exclusively to such conveyances as give the title *to the infant.* (*Revisers' notes*, 3 *R. S.* 2d ed. 675.)    Here, the estate *descended* to the children of West.    (2.) It has no reference to legal estates held by infants *in trust.*    It is transcribed from the act of 1815, (*Laws of* 1815, *p.* 103, § 3,) which was an amplification of an act passed in the preceding year, (*Laws of* 1814, *p.* 128,) whereby the court of chancery in this state was first clothed with the power of authorizing a sale of legal estates held by infants in their *own* right.    The power to authorize or *compel* an infant seised of lands " by way of mortgage, or in *trust* only for others" to convey the same, is of a very different nature, and had been previously conferred upon the court.    (1 *R. L.* 148, § 7.)    The statute giving it did not contain the restriction upon which the plaintiffs rely. Its provisions, in substance, were adopted in the revised statutes, (2 *R. S.* 194, § 167,) and from them alone the court derived its power to order a sale of the legal estate of the infant trustees.    As will be seen presently, the power which it exercised at the same time, in respect to the equitable estates of the infant *cestuis que trust,* had a different origin.    These views do not conflict with the case of *Rogers* v. *Dill,* (6 *Hill,* 415,) cited on the argument; as there the lands were *devised*

to the infants in their *own* right, with a clause in the will prohibiting a sale till 1837, and in making the sale, the prohibition was disregarded.

The plaintiffs also insist that the deed to Strong is within the provision of the revised statutes, which declares that " when the trust shall be expressed in the instrument creating the estate, every sale, conveyance or other act of the trustees, in contravention of the trust, shall be absolutely void." (1 *R. S.* 730, § 65.) The object of this provision is to protect *cestuis que trust* from the unauthorized acts of their trustees, by charging persons dealing with the latter with knowledge of the trust. (*Revisers' notes,* 3 *R. S. 2d ed.* 586.) I apprehend it is not intended to divest courts of equity of their power in respect to selling the legal estates of infant *trustees,* which power, as has been seen, is preserved by the revised statutes. The exercise of such power does not affect the *cestui que trust,* for the purchaser acquires only the rights of the trustee. Nevertheless, as trustee, he can set up his legal estate, *at law,* even against the *cestui que trust.* (*Doe* v. *Staple,* 2 *D. & E.* 684. *Doe* v. *Wroot,* 5 *East,* 132. *Jackson* v. *Chase,* 2 *John. Rep.* 84. *Moore* v. *Spellman,* 5 *Denio,* 225.)

Again ; if the title descended to the children of West, then the petition upon which the court of chancery acted in ordering a sale, presented, on its face, a case of lands held by infant trustees, within the jurisdiction of the court respecting the sale of infants' lands, (2 *R. S.* 194, § 167,) and the decision of that court in regard to the construction of the several statutory provisions now invoked by the plaintiffs, whether correct or otherwise, must be regarded in every other court as binding upon the parties to that proceeding, until reversed. (5 *Selden,* 266, *and cases there cited.*)

It follows, from the foregoing considerations, that the defendant established a complete legal defense to the claim of the plaintiffs in this action. The conveyance to Strong, executed in pursuance of the order of the court, transferred the

legal title of the heirs of West as effectually as if it had been made by the heirs themselves when of lawful age, (2 *R. S.* 194, § 168,) and the defendant, at the commencement of the action, held the title which passed by that conveyance.

I am also of the opinion that the defendant has a valid equitable defense, of which he may avail himself under his answer.

The equitable estates in remainder which, as has been seen, the plaintiffs held in the land in question, at the time of the proceedings in chancery, were transferrible in equity. They were not mere possibilities. (5 *Paige*, 466.) Even possibilities coupled with an interest are assignable, in equity. (7 *Paige*, 70. 2 *Selden*, 186, 187.) So, of *trust* estates. (2 *Stor. Eq. Jur.* § 974.) Under the revised statutes, these estates are alienable. (1 *R. S.* 723, §§ 9, 13. *Id.* 725, § 35.) There is nothing in the trust deed prohibiting the *plaintiffs* from selling their interests. If of full age, they could undoubtedly have sold their equitable interests during the lifetime of their mother. (2 *Story's Eq. Jur.* § 974. 10 *John.* 494. 1 *Barb. Ch.* 412.)

The court of chancery had inherent jurisdiction, independently of statute, to order a sale of the *equitable* interests *of the infant plaintiffs.* It is a settled principle, that whenever the property of infants consists of real or personal estate, the title to which is in trustees, the chancellor, as the general guardian and protector of the rights of infants, may authorize such a disposition thereof as he, in the exercise of a sound legal discretion, may deem most beneficial to such infants, provided the rights of other persons are not prejudiced thereby. (20 *Wend.* 375, 6, 380.) Whatever restrictions may have been put upon this power by the provisions of the revised statutes rendering trustees incapable of transferring the title to trust estates, in contravention of the trust expressed in the instrument creating such estates, (*Id.* 376,) it is conceived that courts of equity still have the power, which they have long exercised, of changing the estates of infants

Wood *v.* Mather.

from real into personal, and from personal to real, whenever they deem such a proceeding most beneficial to the infant. (3 *John. Ch.* 370. 5 *id.* 163.) When the court directs any such change of property, it also directs the new investment to be in trust for the benefit of those who would be entitled to it if it had remained in its original state, and thus the objects of the trust are not contravened, and the rights of the *cestui que trust* are fully protected. In the proceedings which were had for the sale of the interests of the plaintiffs in this case, their lands were exchanged, by the direction of the court, partly for other lands, and partly for money, the payment of which was secured by the bond of the purchaser and a mortgage on the lands sold, executed to the clerk of the court, for the benefit of the plaintiffs. The lands taken in exchange were conveyed directly to the plaintiffs and Judith Wood, without the intervention of a trustee, and have since been sold in a partition suit to which they were parties, and all of them, Mrs. Anderson included, have received their shares of the avails of the sale. Assuming that the power of the court went no further than to change the property, not absolutely, but with the qualification that the infant owners, on coming of age, could take the original estate at their option, and assuming, further, that Mrs. Anderson, by reason of her coverture, ignorance of her rights, or any other circumstance, is not estopped by lapse of time from claiming her original estate, nevertheless her remedy is not *at law*, but in equity, where, on her restoring or offering to restore what she has received, or showing that without her fault it is not in her power to do so, such decree may be made as will best protect the equitable rights of the purchaser as well as her own.

The statutes above referred to give the court of chancery power over infants' *legal* estates, only. (4 *Comst.* 266.) But the power is ample; and it would be a remarkable anomaly, if the court had not, also, a jurisdiction at least equally extensive, in respect to infants' *equitable* estates, which, by

their very nature, are under its peculiar and exclusive care. There are remarks to be found in some of the reports, to the effect that the power of the court is derived wholly from statute, but so far as I have observed, they occur in cases involving sales of *legal* estates, and should be understood as referring to such estates only.

This question, and some others discussed in this case, have been set at rest by an unreported decision of the court of appeals. In the case of *Pitcher* v. *Carter,* (4 *Sandf. Ch.* 1,) V. C. Sandford held that under a conveyance of real estate, *prior* to the revised statutes, in trust to pay the income to the grantees for life, and, after their decease, to convey to their heirs, the children of the grantors, while the latter survived, and after the statutes took effect, had an equitable and not a legal interest, and that the court of chancery could authorize the trustee to dispose of the infants' equitable estate, as the court deemed most beneficial for their interests. He held, further, that a co-ordinate tribunal cannot review the decision of the court of chancery made upon an application for the disposal of an infant's *equitable* estate. But he also held that the order of the court authorizing the mortgage executed by the trustee in 1837, which was sought to be foreclosed in the action before him, was obtained by a fraud against the infants and was void, and that the mortgage could not be enforced against them ; and on that ground he dismissed the bill. This decision was made in 1846. In 1849 it was reversed by the supreme court, before Justices Hurlburt, McCoun and Edwards ; they holding that there was no fraud in obtaining the order, and that the authority to execute the mortgage was properly exercised. (4 *Sandf. Ch.* 21, *note.*) The decision of the supreme court was affirmed by the court of appeals in 1851, and although the members of that court were divided, it is understood that the only question respecting which they differed, was whether the purpose for which the mortgage was made, was authorized by the order of the court. (*MS. opinion of Gardiner, J.*)

It seems clear, therefore, upon principle and authority, that the court of chancery had power to order a sale of the equitable interests of the infant plaintiffs in the premises in question. It remains to consider whether the court exercised that power in the proceedings had before it.

The petition, which was presented by the adult plaintiffs, their mother and her then husband, and the infant heirs of Ira West, by their mother and guardian, set forth among other things the trust deed, and the death of the trustee, and alleged that on his death the legal estate in the lands descended to his heirs, and that no person except the other petitioners, and the children of, Morris Wood, deceased, who are the infant plaintiffs in this suit, "had or could have any *beneficial* interest" in the premises. It alleged that it would be advantageous for *all* concerned and *interested* in the premises that they be sold, &c., and prayed the court to order a sale of *the premises;* and further, that "Judith Sampson be appointed guardian of said infants Lewis Wood and Catherine Wood" (Mrs. Anderson) "*for such sale,*" and that Eliza West be appointed guardian of the infant trustees, for such sale. It is true, the only conveyance prayed for was a deed of the estate of the infant trustees, but that is all that was necessary, since, as will be seen presently, a deed was not required to pass the equitable interests of the *cestuis que trust.* This petitition presented a proper case for the exercise of the jurisdiction of the court in respect to the sale, not only of the legal estate of the infant trustees, but also of the beneficial interests of the infant *cestuis que trust.* It appears by the stipulation of the parties, and the referee has found, that the guardians were appointed as prayed for, and the *premises* were ordered to be sold by the guardian for the infant *cestuis que trust,* under the direction of a master ; that in pursuance of such order, and under the direction of a master, she contracted to sell the premises to Joseph Strong for $1800, which was their full value, and reported the agreement of sale to the court, and the court by order confirmed it, and directed

the guardian of the infant trustees to execute a deed of the premises to the purchaser, on receiving the consideration therefor, which was done; and that the consideration was paid, and the purchaser went into possession.

The contract of sale made by the guardian of the infant *cestuis que trust,* ratified and confirmed by the court, *of itself,* transferred their equitable interests to the purchaser, on his paying the price agreed upon therefor. If it was in writing, the equitable title passed thereby, without the formality of a deed; if not in writing, payment, possession and improvements by the purchaser vested the equitable title in him and his grantees. (2 *Story's Eq. Jur.* § 759. 4 *Comst.* 403.) The equitable title thus acquired by the purchaser was transferred to the defendant, who held it when this suit was commenced.

I have not thought it material to inquire whether the court of chancery, in this case, had power to make a sale which would bind after-born children of Judith Sampson, as there were no such children, and besides, the only interests under consideration are those of the two infant *cestuis que trust,* who were then in being. The purchaser, of course, took their interests, and nothing more, and he probably took them subject to all contingencies which attached to them before the transfer.

I think the equitable title thus acquired by the defendant constitutes a defense to the claim of Mrs. Anderson, and as it was properly set up in the answer, the defendant may avail himself of it in this action. (2 *Kernan,* 266.) The judgment in favor of Mrs. Anderson should therefore be reversed.

The foregoing reasoning applies also to the claim of the plaintiff Lewis Wood, and the judgment against him in favor of the defendant should be affirmed. It is unnecessary, therefore, to examine the questions made on the argument, as to the effect of his stipulation which was proved before the referee.

Wood *v.* Mather.

Judgment was properly rendered against the plaintiff Obadiah C. Wood. He is clearly estopped from setting up title in himself as against Joseph Strong or his assigns. He was an adult and joined in the petition, in which he alleged that the legal title was in the infant children of Ira West, and prayed that the premises might be sold and a guardian appointed for them to convey, and that the proceeds might be disposed of, as was afterwards done. He is thereby estopped from disputing the title of the purchaser. (1 *John. Ch.* 354.)

I think he is also bound by the agreement of sale entered into by Judith Sampson, as if it were his own act. He petitioned the court to sell the premises "in such way" as the court should order. The court ordered Judith to sell the property, and in pursuance of that order she made an agreement of sale to Strong, which the court ratified and confirmed. This agreement bound his equitable interest as completely as if he had made it himself. *Qui facit per alium, facit per se.*

The conclusion is, that as between the plaintiff Catherine Anderson and the defendant, the judgment in her favor should be reversed, and a new trial had; costs to abide the event; and the judgment in favor of the defendant against the other plaintiffs should be affirmed.

The other members of the court concurring, ordered accordingly.

[MONROE GENERAL TERM, December 1, 1862. *Johnson, James C. Smith* and *Welles,* Justices.]