[No. 579.   October 9, 1895.]

## CHARLES BENT et al., Appellants, v. GUADALUPE MIRANDA et al., Appellees.

Decree, Interlocutory, Vacation of at Subsequent Term.—A decree establishing complainant's interest in certain land, but reserving an adjudication "as to its partition to a future term," was an interlocutory, and not a final, decree, and subject to be set aside at a subsequent term of the court, being up to that time unappealable.

ID.—SALE OF MINOR'S INTEREST IN REALTY—DISCRETIONARY POWER OF
    CHANCELLOR.—In such case, it was within the discretion of the chan-
    cellor to dispose, at such future term, of the interest adjudicated to
    the infant complainants for a money consideration, if deemed for
    their best interests.

ID.—SALE OF MINORS' INTEREST IN REALTY—CONSENT—JUDICIAL DISCRE-
    TION—PRESUMPTION.—The mere statement on the face of a decree
    that there was consent, does not operate to show that it was based
    on that alone, but it will be presumed that there was a reasonable
    exercise of discretion, by the court, in directing a sale, intended for
    the benefit of the minors.

APPEAL, from a decree dismissing complainant's
bill, from the Fourth Judicial District Court, Colfax
County.    Affirmed.

The facts are stated in the opinion of the court.

CALDWELL YEAMAN, WELLS, and MCNEAL & TAY-
LOR for appellants.

FRANK SPRINGER for appellees.

The first decree in partition, ascertaining the moie-
ties and directing a partition, is only an interlocutory
decree.    Freem. on Coten. & Par., sec. 516; 17 Am.
and Eng. Ency. of Law, 749–751. See, also, 1 Freem. on
Judg. [2 Ed.], sec. 32; 5 Am. and Eng. Ency. of Law,
371, 373; 17 Id. 750; Williams v. Field, 60 Am. Dec.
428–434.

Such a decree, as this was, is not final, and can
not be appealed from.    Freem. on Judg. [2 Ed.], secs.
29–34; Freem. on Coten. & Par., sec. 319, and cita-
tions.    See, also, Perkins v. Fourniquet, 6 How. 206;
16 Id. 82; Pulliam v. Christian, 6 Id. 210; Craighead
v. Wilson, 18 Id. 199; Beebe v. Russell, 19 Id. 283;
Humiston v. Stainthorp, 2 Wall. 106; Green v. Fisk,
103 U. S. 518; Bostwick v. Brinkerhoff, 106 Id. 3;
Grant v. Phoenix Ins. Co., Id. 429; Parsons v. Robin-
son, 122 Id. 112; Keystone Co. v. Martin, 132 Id. 91;

Lodge v. Twell, 135 Id. 232; McGourkey v. R. R., 146 Id. 536; Huntington v. Moore; Ivory v. Delore, 26 Mo. 506; Durham v. Durham, 34 Id. 447; Perkins v. Allen, 29 Id. 233, 236; Griffin v. Griffin, 10 Ind. 170; Cook v. Knickerbocker, 11 Id. 230; Chester v. Gibson, 15 Id. 10; Williams v. Field, 2 Wis. 421; Dickinson v. Godwise, 11 Paige, 191; Kuster v. Stark, 19 Ill. 328; Delashal v. Geiser, 36 Kan. 374; Holloway v. Holloway, 97 Mo. 628; Turpin v. Turpin, 88 Id. 337; Murray v. Yerkes, 73 Id. 13; Medford v. Harrel, 3 Hawks (N. C.), 41; Bybee v. Summers, 4 Ore. 354; Beebe v. Griffin, 6 N. Y. 464; Lee v. Henderson, 75 Tex. 190; Furman v. Furman, 12 Hun. 441.

All interlocutory orders are under the control of the court which made them until final decree, and may be revised or vacated if the court thinks proper. Fourniquet v. Perkins, supra; Gibson v. Reese, 50 Ill. 383; Gibson v. Crehore, 5 Pick. 157; Park v. Johnson, 7 Allen, 378; Davis v. Roberts, 7 Sm. & M. 543; Kelly v. Stanberry, 18 Ohio, 408; 2 Dan. Ch. Pr. 1511, note 1. And may be set aside at a term subsequent to that at which it is entered. Com. v. Beaumarchais, 3 Call. (Va.) 122; Dobbs v. Dobbs, 27 Ala. 646; Thompson v. Peebles, 6 Dana (Ky.), 387.

A decree for carrying out a settlement and compromise of a suit is not of itself erroneous. When made by consent, it is presumed to be made in view of existing facts, and that these were in the knowledge of the parties. In the absence of fraud in obtaining it, such a decree can not be impeached. Thompson v. Maxwell, 95 U. S. 400.

COLLIER, J.—For a full statement of the bill in this case, which is very lengthy, reference is made to the case of Bent v. Railway Co., 3 N. M. 227. The Maxwell company answered, denying all allegations of fact made in the bill, except what appears of record,

that the decree of September, 1866, was erroneous and void; or that the decree of June, 1865, vested in the Bent heirs a legal estate; but avers it was merely interlocutory. It avers the fairness of the alleged compromise agreement, and that the price paid was a liberal one, and denies all fraud, imposition, or error as charged. The testimony showed that the decree of June, 1865, was obtained during the lifetime of Alfred Bent, and that prior to his death negotiations for a sale of his interest and that of his two sisters, which had been declared by said decree, were pending; that subsequent to his death these negotiations were resumed, one Aloys Sheurick, the husband of one of said sisters, conducting the negotiations; that on May 3, 1866, the negotiations eventuated in a deed being executed by said sisters and their husbands and Guadalupe Bent, mother of complainants, as guardian ad litem for them, conveying, upon a consideration of $18,000, all their interests to L. B. Maxwell in the Beaubien and Miranda grant the property in controversy. There are various estimates given in the testimony as to the value of said interests, based upon a valuation per acre of the land in said grant from two and one half cents to $1.25, many witnesses saying that there was no market value whatever to such lands at that time; and there is other testimony showing that other interests in the grant were purchased from persons sui juris at a less rate than the Bent heirs obtained, and that such were ordinary business transactions at that date. Apart from the testimony to the effect that Maxwell was a man of great influence, that he was determined, resolute, and unscrupulous, that he made threats that no one should occupy any part of his land, and that people at that time had no desire to oppose any of his wishes as to anything he desired to accomplish, there is nothing from which there might be gathered any suggestion of fraud or imposition whatever. It is

shown that the solicitors advised the settlement, and that Sheurick, parting with his wife's interest on the same terms, also advised it. There is some testimony also that Maxwell misrepresented to Sheurick the extent of said grant, saying that it only went to the north boundary of New Mexico, when in fact it extended into Colorado; and it is also shown that at that time, also, the line of New Mexico was thought to extend much further north than it was afterward determined to be, and it was not made very clear whether this was a material misstatement or not. The recitals in the bill sufficiently refer to all documentary evidence necessary to an understanding of the case.

At the threshold of this case arise important questions: First. Is the decree of June, 1865, interlocutory or final? Second. If interlocutory, is it so in a limited sense as specified in the decree or upon the whole merits?

The discussion of the question as to whether a decree is final or interlocutory in its nature arises generally, or we might say almost universally,

INTERLOCUTORY decree, vacation of at subsequent term.

upon motions to dismiss in appellate tribunals for alleged prematurity of appeal. It would certainly be true that, if a decree was final in the sense that it had become appealable, it would also be final in every other respect and as to all matters it adjudicates; but is the contrary true, that a decree which is not appealable because interlocutory, is interlocutory as to everything decided by it? The decisions of the supreme court of the United States upon the question of finality of decrees proceed, not only upon the theory of their being appealable or not, but also that they are direct authority (as a general rule) only upon the construction of the act of congress allowing appeals from the United States district and circuit courts from final judgments. There is, however, no special significance to be attached to this fact,

as decrees final in the same sense are appealable only
in this territory, or at least such seems to be conceded
by counsel for appellants and appellees; but that state-
ment is pertinent in view of the fact that the United
States supreme court will refuse to dismiss an appeal
as to a decree claimed to be interlocutory solely because
the supreme court of a state has held it to be appeal-
able.   Wheeling & B. Bridge Co. v. Wheeling Bridge
Co., 138 U. S. 287.   As to whether a decree is final, so
as to be appealable, is said by Justice BROWN in Mc-
Gourkey v. Ohio Railway Co., 146 U. S. 536, to have
been of more frequent discussion in that court than any
other question of equity practice, and that it must be
conceded that the cases are not altogether harmonious.
As favoring their view that this decree is final as to the
merits of the controversy even to the extent of being
appealable, appellants cite Forgay v. Conrad, 6 How.
201, and the cases of Thomson v. Dean, 7 Wall. 342,
and Winthrop Iron Co. v. Meeker, 109 U. S. 180, in which
the doctrine laid down in Forgay v. Conrad, supra, is
expressly reaffirmed.   Other cases speak of the case of
Forgay v. Conrad being exceptional, some saying that
the peculiar circumstances and the certainty of irreme-
diable injury ensuing if an appeal could not be taken
from a decision in which the whole question had been
adjudicated, because of there being a reference to a
master in which further action must be taken by the
court in the matter of an account, should have made it
appealable, and some that it was only sustainable upon
the theory of execution being awarded.   The other line
of decisions which appellees have cited to sustain their
contention that this is an interlocutory decree begins,
strange to say, with the case of Perkins v. Fourniquet,
6 How. 206, which immediately succeeds Forgay v.
Conrad, supra; the opinions in both cases being from
the pen of TANEY, C. J.   While, in some respects, the
decree in Perkins v. Fourniquet more resembles the

one at bar than does that in Forgay v. Conrad, there is
a similarity in the decree here and in Forgay v. Con-
rad, in the fact that in both the decree recites that the
bill is retained for a limited purpose,—here as to the
partition, and there as to the adjusting of accounts.
The dissimilarity in this respect from the decree in
Perkins v. Fourniquet is marked, in that in it all mat-
ters "are reserved until the incoming of the master's
report." In Pulliam v. Christian, 6 How. 209, next
succeeding Perkins v. Fourniquet, it was held that a
decree setting aside a deed and ordering the property
delivered to a commissioner of the court to take an ac-
count, and "report all matters necessary to a final de-
cree," was "final only as to the trust deed," but, not
being final as to the whole matter in controversy, the
appeal was dismissed. Other cases, beginning with
Craighead v. Wilson, 8 How. 201, say, "that, to au-
thorize an appeal, a decree must be final in all matters
within the pleadings, so that an affirmance of the de-
cree will end the suit." These citations represent quite
completely the positions arising in discussions as to
whether or not a decree is final, so as to be appealable.
Tested by the rule stated in Craighead v. Wilson, su-
pra, it would seem that this decree was not final, so as
to be appealable, because the pleadings certainly em-
braced two matters,—one, the establishing of the inter-
est claimed; and the other, the partition sought by
the bill. The bill in Perkins v. Fourniquet, as it
sought the establishment of a certain interest in real
estate and partition, is very like the case at bar. We
think it would be a profitless task to enter upon a dis-
cussion to reconcile cases which later decisions of the
United States supreme court say are not entirely har-
monious, but we hold that the decree of June, 1865,
was not final so far as to be appealable, thus following
what we conceive to be the rule in Craighead v. Wil-
son, supra.

There recurs, then, the question as to whether it was final in the sense that it could not be vacated in the court where rendered, after the term at which it was rendered; the decree reciting on its face that "the court now reserves and suspends making its decree as to the partition and payment of the costs until a future term of this court." Upon this point, appellee again cites Perkins v. Fourniquet, supra, as later reported in 16 How. 82. In the first decision, Chief Justice TANEY, delivering the opinion there, said that "these interlocutory orders and decrees remain under control of the circuit court, and subject to their revision;" and the circuit court did at a subsequent term in fact reconsider its opinion, and, finding that there was no equity in the bill, dismissed same, it formerly holding precisely to the contrary; and in 16 How. 82 (TANEY, C. J., again rendering the opinion), this was held to be proper, and that, if the court discovered itself to be in error, it had the right to correct the error. This case certainly seems to establish the principle counsel for appellees contend for. It is true that the first decree decided to be interlocutory did in terms say that all matters "are reserved until the incoming of the master's report;" but that clause did not appear to weigh in the mind of the court, but the right appears to be proclaimed that, prior to the time the right to take appeal began, the case should be rightly decided upon all issues, notwithstanding a prior erroneous adjudication. There are expressions in the opinions of the court in other cases which appear to militate against this view; as, for instance, in Pulliam v. Christian, 6 How. 209, the court say this decree "is final only as to the trust deed," but, not being final as to the whole matter in controversy, "is not appealable." In Beebe v. Russell, 17 How. 283, the court say, in discussing Forgay v. Conrad, supra, that it was "doubtful if the lower court could in any way control or qualify its an-

tecedént decree upon the whole merits, except upon a
petition for a rehearing.'' These chance expressions
should not, it appears to us, weigh against the effect of
the decision in 16 How. 82, supra, and we therefore
hold that the decree was interlocutory, and subject to
be set aside at a future term of the court, merely be-
cause it was up to that time not appealable.

This brings us to the contention of counsel for ap-
pellants that, the decree of September, 1866, showing
upon its face that the consent upon which it was based
was not a legal consent so far as these complainants
are concerned, it was merely a modification of the prior
decree pro tanto; that is to say, so far as the adult
complainants were interested, it was entirely abrogated,
and, so far as the infants were affected, it dismissed
only the partition part of the former decree, if even it
did that much.

The position taken by appellants' counsel in their
brief that ''every presumption of law is in favor of the
validity of a judgment by a court of competent juris-
diction, and the jurisdiction to render a particular
judgment is supported by like presumption, except
when the want of jurisdiction appears on the face of
the record,'' and for which they cite a number of cases,
we believe to be well founded in law.

We come, then, to the point as to whether or not the
recital in the decree of September, 1866, of consent, as
affecting these complainants (they being

SALE of minors'
interest in real-
ty: discretion
of chancellor.
minors, and represented by their mother
as guardian ad litem), of itself invalidates
the decree of September, 1866. Our hold-
ing that the decree of June, 1865, was merely an inter-
locutory decree, and subject to revision at a subsequent
term of the district court, carries the conclusion that
the suit in which they were complainants was at the
time of the September, 1866, decree, a suit pending, with

nothing in it that was res adjudicata. Appellees claim that, under such circumstances, it was open to compromise, and that also the interest claimed, whatever might be said as to the effect of a final decree establishing it, was then, at all events, merely an equitable estate. Taking these propositions in inverse order, we think it is manifest that, prior to final decree, the legal estate was in Beaubien and Miranda, the grantees of the Mexican government, and that, prior to final decree establishing their interest, complainants had nothing more (if anything) than an equitable estate. As clearly stated in Cochran v. Van Surlay, 20 Wend. 376: "It is a settled principle that, whenever the property of infants consists of real or personal estate the legal title to which is in trustees, the chancellor, as the general guardian and protector of the rights of all infants, may authorize such a disposition thereof as he, in the exercise of a sound legal discretion, may deem most beneficial for the infants." In Wood v. Mather, 38 Barb. 473, and Anderson v. Mather, 44 N. Y. 260, it is said that, upon principle and authority, a court of chancery has power to sell equitable interests of infants, and that such power is inherent and independent of statutory authority. We hold, therefore, that the interest of these complainants being at the date of the September, 1866, decree, an interest claimed in a pending suit, equitable in its nature, and sought to be established according to the contention of appellants' counsel, as a legal estate, and the decree adjudicating it not being yet final, but interlocutory, and under the control of the court, there was legal discretion and jurisdiction in the district court to dispose of it for a money consideration, if deemed for the best interests of the infant complainants. Shall it then be said that, because the decree professes as its basis "consent" when the complainants were not sui juris, vitiates it when, if the consent had not been

stated, the decree would be upheld by every presumption of law and fact? We think not, but that a fair construction would be that the court considered it beneficial to the interests of these minor complainants, and for that reason the decree was entered, and the recital of the consent and agreement were merely incidents of the transaction; the law finding a basis for the decree in the discretion of the chancellor exerted in the infants' behalf. It is stated in Kingsbury v. Buckner, 134 U. S. 680, that a guardian ad litem can not bargain away the rights of the infant he represents, but he can assent to such arrangements as will facilitate the determination of a suit. It is also said that it is the duty of the court to protect the interests of infants, and see that they are not bargained away by those assuming to represent them. In Taylor v. Franklin Savings Bank, 50 Fed. 289, it is stated to be well settled that "infants can, by an original bill in the nature of a bill for review, attack any decree entered against them during their infancy, and have it set aside for fraud or error in fact." This case is essentially like the case at bar in one respect, viz., the decree was entered upon a settlement and compromise made between a foreclosing bank and the guardian ad litem of infant defendants; and the court say: "It may be, and probably is, true that, so long as this decree is allowed to stand, it is binding by its terms on the infant defendants." And then, after announcing as above the rights of attack by them for fraud or error of fact, the decree was held to be successfully impeached for fraud, and was set aside. There was no pretense in that case that the settlement and compromise by the guardian ad litem vitiated of itself the decree, but it must have been taken by the court as advisory, and was held unauthorized and inequitable, because of the suppression of facts known to the plaintiff. We hold, therefore, that the mere statement on the face of the decree that there was consent does

*(margin note:)* SALE: consent: judicial discretion: presumption.

not operate to show it was based on that alone, and that it will be presumed there was a reasonable exercise of discretion intended for the benefit of said minors. The United States supreme court, in Thompson v. Maxwell, 95 U. S. 398, has said that this "decree for carrying out a settlement and compromise of a suit is certainly not of itself erroneous. When made by consent, it is presumed to be made in view of existing facts, and that these were in the knowledge of the parties. In the absence of fraud in obtaining it, such a decree can not be impeached."

Thus, we are brought to the question as to whether there was fraud in obtaining the decree. We do not enter into a discussion at large of the testimony by which it is claimed that the decree of September, 1866, is successfully impeached upon the ground of fraud; and while we are not prepared, in view of testimony submitted since the decision in Thompson v. Maxwell, 95 U. S. 400, to say that "the proofs show a case which, in our judgment, supports the conclusions of the decree to the effect that the terms of the compromise made by the adult parties to the suit (including the mother and guardian of the infant heirs of Alfred Bent) were advantageous to the said infants, and were so considered and accepted by the court in their behalf," we do hold that the judgment of the court at that time in so considering and accepting said terms was shown to be a fair and reasonable exercise of the chancellor's discretion, and that no fraud, imposition or error has been shown to have entered into said transaction, or to have brought about said compromise decree.

It is claimed by appellants that there has been a decision of this court (Bent v. Maxwell L. G. & Railway Co., 3 N. M. 227), which is the law of the case, and that in and by said decision it was held that the decree of June, 1865, vested in Alfred Bent a legal estate, which descended to complainants, which legal estate

there was no authority in the chancellor to dispose of by sale, as and by the decree of September, 1866. From a careful reading of the bill filed in this cause, it does not appear that this portion of the opinion delivered by the court in Bent v. Maxwell L. G. & Railway Co. was at all necessary to the disposition of the demurrer which had been interposed. Indeed, following upon the announcement of the court that the bill states "facts sufficient to warrant the interference of a court of equity in their behalf, and that, under the authorities cited, they have properly brought their bill in the form of an original bill to impeach the decree complained of on the grounds of fraud, imposition, and error," BELL, A. J., arguendo, states what is relied on by appellants' counsel as determining the law of the case; viz., that this was a legal estate, established by the decree of June, 1865, and the district court had no authority to order its sale. This announcement was essentially dictum, and, if correct as stating abstract principles of law, has, in our view, no application to this case; the decree of June, 1865, not being final, but interlocutory, and the equitable interest of Alfred Bent not having been conclusively established by a final decree in the district court.

Other questions, around which has been thrown a wealth of learning and research, such as befits the ability of counsel engaged, and the magnitude of the interests involved, we deem it unnecessary to advert to, as the views we have expressed are sufficient for a disposition of the cause adversely to appellants. It is the opinion of the court that the decree of the district court in and for the county of Colfax dismissing said bill of complaint ought to be affirmed, and it is accordingly so ordered. It is further ordered that this cause be remanded to said lower court, with directions to carry said decree into effect.

LAUGHLIN, HAMILTON, and BANTZ, JJ., concur.