### GIDDINGS & COLEMAN *vs.* EASTMAN and wife.

Where an attorney, who was employed to collect or foreclose a mortgage, in-
stead of foreclosing the same, took a conveyance of the equity of redemption
to himself, instead of his clients; *Held,* that he took the legal title as a
trustee for his clients, and that upon his death the legal estate descended
to his heirs at law charged with the trust, and that the clients were enti-
tled to a conveyance from the heirs, upon the repayment of the amount paid
by the attorney for the equity of redemption, and the amount due for his
services, and the value of the improvements made upon the premises by
the heirs before they had notice of the existence of the trust. *Held*
also that one of the heirs, who had purchased and paid for the shares of
the other heirs in the trust premises, before he had any notice of the trust,
was entitled to hold the shares thus conveyed to him, discharged of the
trust, and that the cestuis que trust must look to the heirs who sold such
shares, for the purchase money received by them on the sale.

Where several heirs or devisees are turned into trustees by construction, as
to lands devised or descended to them, but without any actual or construc-
tive notice of the existence of the trust, one of such heirs or devisees may
become a bona fide purchaser of the shares of his co-heirs, or co-devisees,
so as to entitle him to hold their shares of the land discharged of the trust,
although the other share, which he held with them as a tenant in common,
remains subject to the trust.

THIS was an appeal from a decree of a vice chancellor. March 15.
The bill, which was filed in 1827, in the equity court of the
eighth circuit, alleged that on the 10th of December, 1804,
B. Van Norman gave to the complainants four promissory
notes, of $150 each, payable on demand, with interest, and
that on the 4th of April thereafter, to secure the payment of
these notes, he mortgaged to the complainants a lot of land in
Batavia, containing two acres, which mortgage, in 1807, was
recorded in the book of deeds in Genesee county; that, in
1808, Van Norman conveyed the mortgaged premises to J.
Hickcox, excepting a small portion thereof which had been
previously conveyed to D. B. Brown; that Hickcox, at the
time of the conveyance to him, had notice of the complain-
ants' mortgage; that the complainants afterwards delivered
their mortgage to C. Blanchard, an attorney, residing at Ba-
tavia, to collect or foreclose, who informed Hickcox thereof,
and proposed to him to take a release of the equity of re-
demption, and to pay him $20 for such release, instead of fore-

closing the mortgage; to which proposition Hickcox assented, and in November, 1810, conveyed the mortgaged premises to Blanchard, except the portion thereof which had been previously conveyed to Brown; which conveyance was taken by Blanchard in his own name, but for the sole use and benefit of the complainants; that Blanchard died in April, 1811, intestate, and without issue, leaving his sister Abigail, the wife of the defendant J. F. Eastman, and four other sisters, his heirs at law; that after the death of Blanchard, Eastman administered on his estate and became possessed of his papers, among which was the mortgage of the complainants; and that he had been in the receipt of the rents and profits of the premises, and had procured releases from the sisters of his wife of their interest in the premises.    And the complainants prayed that the defendants might be decreed to release and convey the premises to them, or pay the money due to them upon the mortgage, with interest; and for general relief.    The defendants, by their answers, denied all knowledge of the execution or existence of the notes, or of the mortgage to the complainants, except from the copy of the mortgage contained in the book of deeds, which did not appear to have been either acknowledged or proved, so as to entitle it to be recorded; and from which copy it did not appear when the notes were payable, or whether they were on interest.    The defendant J. F. Eastman admitted that he was informed of the record, in the book of deeds, as early as 1813, but that as the complainants and Van Norman had then left the state, and as he was unacquainted with their places of residence, he had no means of ascertaining whether there was any thing due on the mortgage; and he denied that any mortgage was found among the papers of Blanchard.    He also admitted that Van Norman conveyed to Hickcox, as stated in the bill; that Hickcox paid a part of the consideration down, and gave a bond and mortgage to Van Norman for $300, the residue of the purchase money; and that at the time of that conveyance Hickcox was entirely ignorant of the existence of the alleged mortgage to the complainant.    He also admitted the conveyance from Hickcox to Blanchard, but denied all knowledge or information that it was given to Blanchard as the attorney or

trustee for the complainants ; and he alleged that he purchased the rights of the other heirs at law of Blanchard, and paid them therefor, and took conveyances from them, in good faith, under a belief that they were the legal and true owners thereof, without any notice of the trust, or of the equitable claims of the complainants as set up by them in their bill. He also insisted that if the mortgage and notes ever were executed as alleged in the bill, from the great length of time which had elapsed, they must be presumed to be paid. The cause was heard before the vice chancellor upon the pleadings and proofs, and he decreed that the conveyance from Hickcox to Blanchard was a conveyance of the equity of redemption of the mortgage given to the complainants, and was accepted and received by him as their attorney and agent, for their use and benefit, in satisfaction of the mortgage ; and that he thereby became seized of the premises in trust for them, and remained so seized at the time of his death ; that the defendants still held the one-fifth of the premises, which descended to Abigail Eastman, in trust for the complainant ; that they should convey that fifth of the premises to the complainants, and account to them for the rents and profits thereof from the death of Blanchard ; the complainants paying one-fifth of the taxes, and of the permanent improvements upon the premises since the death of Blanchard ; and that Eastman was entitled to the other four-fifths of the premises as purchaser. A reference was directed, to take the account accordingly. From this decree the complainants appealed.

The following opinion was delivered by the vice chancellor at the time of making the decree appealed from :

GARDNER, V. C. If any credit is to be attached to the declarations and acts of Blanchard, the relation of attorney and client, between him and the complainants, is unquestionably established by the proofs in the cause. The witness Hickcox states that he held a conversation with Blanchard, at Avon, upon the subject of the complainants' mortgage ; that he wrote to the complainants, requesting them to foreclose their mortgage ; and that Blanchard superscribed the letter, and,

1836.

Giddings
v.
Eastman.

as the witness believes, was acquainted with its contents. We then learn, from Brown, that Blanchard informed his brother that he had got the mortgage of the complainants to foreclose, but that there was a difficulty in the record which would prevent a foreclosure under the statute ; and that after consultation, it was decided that Blanchard should take a release from Hickcox, or foreclose in chancery. Hickcox then testifies that he was applied to by Blanchard, who informed him he was employed to foreclose the mortgage, and wished to obtain a release, as the better method for them both ; and that a deed, for the consideration of twenty dollars, was accordingly executed by the witness to Blanchard. No reasonable doubt can remain, after this testimony, of the retainer of Blanchard. It follows, then, as a probable consequence, that he received the mortgage to enable him to effect the foreclosure. Such would be the ordinary course of proceeding ; and this inference is strongly confirmed by the direct testimony of Brown, and the better recollection of Hickcox as to the declaration of Blanchard to him at the time of the application for the release. If Blanchard received the mortgage, then its non-production is sufficiently accounted for. The defendant, who, since the decease of Blanchard, has had the custody of his papers, says, in his answer, that after diligent search, no such paper can be discovered. This is prima facie evidence of the loss of the instrument, and consequently will authorize the admission of secondary evidence as to its contents. The execution of the mortgage, and its contents, are established by the depositions of the subscribing witness and the mortgagor, and by Stevens, the clerk of the county of Genesee. The declarations of the parties, at the time of the execution of the mortgage, as to the purpose for which it was made and the land to be included therein, are admissible for the purpose of identifying the instrument, as the witness was not required to, and did not in fact, peruse the mortgage. And the original mortgage being lost, this evidence is pertinent to show that the record from the clerk's office is a true copy of such mortgage. But this is by no means the only evidence upon that subject. The deposition of the mortgagor is full upon this point ; and, in addition, we have the statement of

Blanchard that there was a record of the mortgage in question, but that there was a difficulty about it which would prevent a foreclosure under the statute. By reference to the deposition of the clerk, it will be ascertained that the record was a true copy of the original mortgage, and that the difficulty, to which Blanchard must have alluded, was the want of a certificate of acknowledgment, and the fact that the mortgage was recorded in the book of deeds. On the whole, I am of the opinion that the proof of the execution of the mortgage and its contents is reasonably sufficient. The retainer of Blanchard, by the complainants, being established, and he having taken a release of the equity of redemption to himself, as he declared to Hickcox, as the shortest method of effecting the objects of a foreclosure, he is to be deemed a trustee, and, at the election of the complainants, was bound to convey the land in question to them, and to account for the rents and profits.

But it is contended by the defendants, that the complainants have elected to disaffirm the trust, and that their application to Van Norman, in 1814, receiving a partial payment, and taking new notes for their several proportions of the mortgage debt, is conclusive evidence of their determination upon this point. There could be no question of the truth of this proposition, if it could be shown that the complainants, at the period alluded to, had any knowledge of the acts of Blanchard. But an election necessarily presupposes some knowledge of the facts upon which that election is predicated; and no such knowledge is proved in the present instance. Blanchard received the deed of Hickcox on the 5th of November, 1810, and died in 1811; and there is no evidence, nor is it pretended, that he communicated his proceedings to the complainants. His personal representative denies all knowledge of the trust, or of the facts from which it is to be inferred; insisting that the first suggestion of the kind was made by Brown shortly before the filing of the bill. They knew nothing, and of course could not apprise the complainants of their rights; and so far as appears from the proofs, no persons, directly or indirectly connected with Blanchard, have taken any steps since his death, even to put the

complainants upon inquiry. The complainants were residents of another state; and receiving no advices from Blanchard, and probably hearing of his death, it is not singular, and certainly ought not to be construed as a waiver of their rights as against him or his heirs, that they should have resorted to the mortgagor for payment. I do not perceive the force of the objection, that the receipt of the new notes was a severance of the debt. The complainants continued to have a common interest in the security; and that the mortgage was not intended to be affected by the arrangement, is manifest from the declaration of the mortgagor, at the time, that he was poor, and they must look to their mortgage and to the land for the residue of their debt.

Another branch of the defence is, that the defendant Eastman, as to four fifths of the premises, is a bona fide purchaser for a valuable consideration, and without notice. All notice of the trust is unequivocally denied in the answer. The defendant has set forth and proved conveyances from four of the five heirs at law for a valuable, and, so far as I can discover, an adequate consideration actually paid. The only question therefore is, whether the facts admitted in the answer, or established by the proofs, were sufficient notice to him to put him upon inquiry. Assuming that Eastman, as early as 1813, had notice of the mortgage and that it had been given to secure the payment of notes dated some years prior to that time, he might reasonably presume that they were paid, before the date of his purchase in 1819; and notice of the mortgage was not a constructive notice of the trust. The presumption from the conveyance of Hickcox to Blanchard would be, that the latter took the title for his own benefit, and not in trust for another; and this presumption would be the same, whether there were a valid outstanding mortgage or not. In the one case Blanchard would take the land subject to, and in the other discharged of the encumbrance; but in neither case would the conveyance or mortgage furnish notice of any trust. Indeed, I have not been able to discover any thing in the answer, or the evidence, which in my judgment ought to have the effect of depriving this defendant of the protection due to a purchaser in good faith. On the contrary,

1836.
Giddings
v.
Eastman.

the conveyance from Hickcox, his bond and mortgage found among the papers of Blanchard, and the non-claim of the complainants for so many years, were all calculated not only to quiet suspicion, but to induce the belief that Blanchard held the entire title to the property in question.

I am not called upon to determine what would have been the rights of the defendants, in case a foreclosure had been sought by the bill. The bill is framed for no such purpose. It has not the requisite parties, and the only legitimate relief must be founded upon the establishment of the trust alleged in the bill.

*J. C. Spencer*, for the complainants. There is sufficient proof to let in parol evidence of the contents of the mortgage of Benjamin Van Norman to the complainants; and the execution of the mortgage and its contents are sufficiently established against the defendants. The mortgage was placed in the hands of Blanchard for collection, and he received the deed from Hickcox in pursuance of his employment. He therefore received it as trustee for the complainants, if they choose to affirm the trust. Neither has there been any waiver, election, or discharge by the complainants, by which the trust has become extinguished.

The land descended to the heirs of Blanchard, charged with the trust; and they had no estate which was the subject of a conveyance by them. The defendant J. F. Eastman is not to be protected as a purchaser, for a valuable consideration, in good faith and without notice, of the undivided interests which he purchased of some of the heirs of Blanchard. Being a trustee, in right of his wife, of an undivided fifth part of the premises, any purchase which he made of the remaining undivided shares, enured to the benefit of the cestuis que trust; and notice of the trust was not necessary to charge him. He has not sufficiently denied all circumstances from which notice of the trust could be inferred; and there is evidence, in his answer, of sufficient to have put him on inquiry. At all events Eastman and his wife are trustees for the complainants, of one-fifth of the premises, and must account for that proportion of the rents and profits, after deducting all just allowances.

And if Eastman is not chargeable for the four-fifths of the premises which he purchased of the heirs at law of Blanchard, in the character of a trustee, he is liable as purchaser of that portion of the premises, to pay and satisfy a proportionate part of the amount which the mortgage of Van Norman was given to secure. Under this bill the complainants may have that species of relief for the proportion specified. All those persons whom the complainants were bound to make parties for such relief, are parties. The defendant Eastman cannot avail himself of the statute of limitations, as neither the statute, nor any analogous rule of equity applies to the case. He had such notice of the mortgage to the complainants as dispensed with its registry. He cannot avail himself of Hickcox's want of notice of that mortgage ; and if he could, there is abundant evidence of a notice to charge him.

There may be a decree affirming that part of the vice chancellor's decree which declares Eastman and wife to be trustees of one-fifth ; and referring it to a master to ascertain the value of that fifth at the time of the conveyance to Blanchard, and if not sufficient to satisfy the residue then due on the complainants' mortgage, the defendant J. F. Eastman should be compelled to pay that balance, with interest, by a day to be appointed ; and if not paid, then the other four-fifths should be sold by a master.

*F. M. Haight,* for the defendants. The record of the mortgage to the complainants, is no evidence of any mortgage having been executed. The record is not admissible for any purpose ; and there is no legal evidence of the execution of the mortgage stated in the bill. There is no proof of the loss of the mortgage ; and without such evidence it must be produced. At least we should have the notes. The evidence does not make out a trust by implication, in the intestate, Blanchard ; and if any such trust existed, it has been waived or discharged. A court of equity, under the circumstances of this case, will presume such waiver and discharge. As to four-fifths of the premises, the respondent is a bona fide purchaser without notice of the trust. And the complainants were not entitled to a decree for the mortgage money against

the defendants, or to a foreclosure of the mortgage, on the pleadings and proofs in the cause.

THE CHANCELLOR. The question does not properly arise, on this appeal, whether Blanchard took the conveyance from Hickcox as the attorney and agent of the complainants. It is very evident, however, that such was the legal result of the transaction proved in this case. In reference to this question, it is perfectly immaterial whether there was legal proof of the actual execution of the mortgage, a copy of which was inserted in the book of deeds, or whether Blanchard had the original mortgage in his possession at the time he took the conveyance of the equity of redemption to himself. It was sufficient that the complainants claimed to be the holders and owners of such a mortgage as was copied into the book of deeds, and that Blanchard, as their attorney, undertook to collect or foreclose it for them. It is doubtful, from the testimony, whether he ever had the original mortgage in his possession, as it was not found among his papers at the time of his death, and as the notes are proved to have been in the hands of the complainants, in Virginia, subsequent to that time. The declarations of Blanchard, that he had got the mortgage to foreclose, may well be satisfied by supposing that he had gotten directions to foreclose the mortgage, which they probably supposed, from the application which was made to them for authority to foreclose it, was properly acknowledged and recorded in the clerk's office of the county. But whether he had possession of the original mortgage or not, the testimony is sufficient to shew that he professed to deal with Hickcox in the character of attorney for the complainants, and that except in that character he would not have been enabled to obtain the release of the equity of redemption, to prevent the costs and expense of a foreclosure. It is not necessary to presume, in this case, that Blanchard had any intention of defrauding his clients. He had a lien, for the $20 which he paid to obtain the release from Hickcox, and for his services in transacting the business; and he probably took the release in his own name to secure that lien until he could see his clients and settle with them, they at that

time residing out of the state. And his death, a few months afterwards, prevented his clients from obtaining the necessary information as to what had been done ; and left the legal title in the heirs at law, charged with the trust, although both they and the complainants were ignorant of the fact at that time.

I find nothing in the answer of Eastman, or in the evidence in this case, which can deprive him of the character of a bona fide purchaser of the rights of the four sisters of his wife, without notice, either actual or constructive, that Blanchard, at his death, held the premises in the character of trustee for the complainants. Eastman resided in a distant part of the country, at the death of his brother-in-law ; and when he went to Batavia to inquire into the state of the property which was left, he found an absolute conveyance from Hickcox for this lot, which was pointed out to him as the property of Blanchard. And there was nothing upon the face of that conveyance which could have induced him to suspect that it was a conveyance in trust, for the complainants or any other person. The copy of the mortgage, irregularly recorded in the book of deeds, was pointed out to him a year or two afterwards, and was good constructive notice to him of the existence of such a mortgage, if it had actually been given ; but it was not even a constructive notice to him that the deed from Hickcox to Blanchard was taken by the latter as attorney and trustee for the mortgagees. If it was a valid and subsisting mortgage against the land, then Eastman purchased with notice of the complainants' rights as mortgagees merely, but not of the right which they now claim by virtue of the trust upon which the conveyance to Blanchard was taken.

It is insisted, however, by the complainants' counsel, that as Eastman and wife held an undivided share of the premises, in right of the wife, as one of the heirs at law of Blanchard, charged with the trust, although they were both ignorant of the fact that any such trust existed, it was impossible for Eastman to become a bona fide purchaser of the undivided shares of the other four heirs at law. This position cannot be sustained upon any principle of equity. The cases referred to by the complainants' counsel, upon this point, are cases in which a trustee holding the estate for another has taken

advantage of his situation to purchase in an outstanding title, or to secure some advantage which, in equity, it was his duty to purchase or secure for the benefit of his cestui que trust; or where, from the situation of the purchaser in reference to others, it might be presumed he intended to make the purchase for his and their joint benefit. But where one devisee or heir at law is by construction turned into a trustee, without any knowledge on his part that he is such trustee, or of the facts which make him a trustee constructively, it appears to be impossible to hold that he may not be a bona fide purchaser of the undivided share of another tenant in common in the same property, as to which he is equally ignorant that any trust exists. The conclusion of the vice chancellor was therefore right, that Eastman acquired a valid title to four fifths of the premises, by purchase from the heirs, and that he now holds that portion of the premises, discharged of the trust which attached to it in the hands of the heirs.

It is very doubtful whether the complainants can elect to consider the conveyance to Blanchard as a purchase of the equity of redemption, for their use and benefit, for one purpose, and at the same time to consider him or his heirs, or the purchaser under them, as the legal owner, subject to the mortgage, for another purpose. I am inclined to think that, if they consider and elect to treat it as an extinguishment of the equity of redemption, for their use and benefit, as to the fifth of the premises which has descended to Mrs. Eastman, for the purpose of obtaining from the defendants a conveyance of that share, they must elect to consider it so *in toto*, and look to the heirs, who have conveyed to Eastman, for their shares of the purchase money received on their sales.

Even if a foreclosure of the mortgage had been sought by the bill, it could not have been had upon the proofs in this case, as there is no legal evidence of the existence of such a mortgage as is described in the complainants' bill. If it was perfectly clear that the mortgage was actually in the possession of Blanchard at the time of his death, its loss might be presumed; as it appears by the answer of Eastman that it was not found among his papers. And the copy of the mortgage entered upon the book of deeds, in connection with the

testimony as to its execution, would, in that case, be good secondary evidence of its original existence and contents. The bill alleges that all the notes were payable on demand, with interest from their date, and that the mortgage was given to secure the payment of such notes. The copy of the mortgage on record, however, does not show when the notes were made payable, or whether they were upon interest or not. And as this was a material allegation in the bill, and was put in issue by the answer, it was necessary that the complainants should sustain it by proof, before they could be entitled to a decree of foreclosure. Van Norman says he does not know whether his notes to Coleman and Giddings were due when he went to the south to reside, in 1809, but that some years afterwards, one of the complainants brought the notes to him, in the state of Virginia, when he made a payment thereon, and gave new notes for the balance. And from the whole of his testimony, I think it is fairly inferrible that the four notes were not all payable on demand, as stated in the bill, and that the mortgage was not given to secure such notes as are there described. The complainants should, at least, have given in evidence the new notes of Van Norman, to show whether they were payable at the time of filing their bill, and the amount that was still due upon the mortgage. The vice chancellor was therefore right in not decreeing a foreclosure.

The decree appealed from is affirmed, with costs; and the proceedings are to be remitted to the vice chancellor.