## SUPREME COURT.

The Connecticut Mutual Life Insurance Company, respt's agt. The Cleveland, Columbus & Cincinnati Railroad Companies, app'ts.

*Railroad bonds*, payable to A. B. or holder, at a particular place, are *negotiable*, passing by *delivery*, whether *under seal* or not, or whether or not *indorsed by the payee*.

The *interest coupons* upon such bonds are negotiable promises to pay a certain sum of money at a certain time, to the holder, so made as to be cut off and circulated independently of the bond; and if not paid *when due, interest may be allowed upon them by way of damages for the delay of payment*.

Where a *guaranty* of such railroad bonds is made by third persons by indorsement thereon, "for value received," the guaranty is not an *accommodation* guaranty or indorsement, but expresses a sufficient *consideration upon its face*.

Where there is a state law authorizing any *two or more railroad corporations* created under the laws of such state, *whose lines are connected*, to enter into any arrangement, to aid in the construction of any road requiring it, by subscription to its capital stock or otherwise, for their common benefit, it *authorizes the guaranty* of the bonds issued by such corporation to be made by any other corporation who is party to the arrangement.

Where a law of another state declares that no *director* of a railroad company shall purchase any of the bonds of any railroad of which he may be a director, for *less than the par value* thereof, and that all such bonds, &c. so purchased shall be *void*, and the supreme court of that state have decided that certain railroad bonds alleged to have been purchased in violation of this act are valid securities, and upon which the holders are entitled to recover the full amount of principal and interest, without reference to the amount paid for them, the courts of this state, where that question arises, will consider it settled by such decision.

*Guarantors* of railroad bonds may be liable independently of the question whether the bonds are void under a certain statute.

Where the action is brought upon the bonds and coupons of a railroad corporation created in another state, but are *payable in this state*, the cause of action arises here, and this court has jurisdiction, though both parties are foreign corporations. (*See S. C.* 23 *How. Pr. R.* 180.)

*New York General Term, May,* 1863.

SUTHERLAND, *P. J.*, LEONARD and MULLIN, *JJ.*

THIS action was brought to recover the amount due on one hundred and forty coupons, originally attached to twenty bonds issued by the Columbus, Piqua & Indiana Railroad Company, the payment of which was guaranteed by the defendants by written indorsements on the bonds, guaranteeing the payment of principal and interest.

The defendants set up in their answer that the guarantees were unauthorized, and without consideration, and that the plaintiffs had notice of it; also that the bonds were purchased from the Piqua company by one William Dennison, jr., for less than their par value, and that he was at the time of such purchase a director of that company, and that by the laws of Ohio the bonds for that reason became void, and that the defendants were induced to make the guarantees by false representations made by the said William Dennison, jr., and one William Neil, of all which the plaintiffs had notice; also that the defendants were accommodation guarantors, and that the plaintiffs took the bonds with knowledge of the matters alleged by the defendants, and paid nothing except a small percentage for the bonds; also that the original issuing of the bonds was contrary to the laws of Ohio; also that an injunction was pending, which forbade payment.

On the trial of the action at the circuit there was a verdict for $6,378.62 for the plaintiffs, from the judgment entered on which, the defendants have appealed to the general term.

E. S. VAN WINKLE, *for the appellants.*

I. The judge erred in directing the jury to allow plaintiffs interest on the coupons from their respective dates,

because interest on interest cannot be recovered until *after* judgment, or upon a special agreement, made *after* the interest is due. (*State of Conn.* agt. *Jackson*, 1 *Johns. Ch. R.* 13; *Van Benschoten* agt. *Lawson*, 6 *J. Ch.* 313; *Toll* agt. *Hiller*, 11 *Paige*, 228; *Mowry* agt. *Bishop*, 5 *Paige*, 98; *Quackenboss* agt. *Leonard*, 9 *Paige*, 334; *Doe* agt. *Warren*, 7 *Greenl.* 48; *Sparks* agt. *Garreques*, 1 *Binney*, 165; *Hastings* agt. *Wiswall*, 8 *Mass. R.* 455; *Parsons on Contracts*, 2d vol. p. 428, and cases referred to in note r.)

N. B. The case of *Greenleaf* agt. *Kellogg*, (2 *Mass.* 548,) is overruled in 8 *Mass.* 455, and 7 *Greenl.* 48.

II. The defendants being indorsers or guarantors, without consideration, and for accommodation, are only liable to *bona fide* holders, for value received, to the extent of the value paid, and the defendants having shown they were mere accommodation indorsers, the burden of proving *bona fides*, and value paid, was on the plaintiffs, which they have failed to do, so far as regards the *bona fides*. (*Chit. on Bills*, 9th ed. 70; *Wiffin* agt. *Roberts*, 1 *Esp.* 261; *Ingalls* agt. *Lee*, 9 *Barb. S. C. R.* 647; *Rapelye* agt. *Anderson*, 4 *Hill*, 472.)

1. The defendants were mere accommodation indorsers or guarantors.

The bonds were the liabilities of the Piqua railroad. None of the proceeds were to be received by the defendants. There was no binding obligation on anybody to do anything for the defendants, in consequence of their guaranteeing the bonds. In the eye of the law they were mere accommodation indorsers. The guarantees were given on the 7th April, 1854, and under the alleged authority of a resolution passed on 6th March, 1854. These bonds at that time were the property of Messrs. Neil & Dennison, to whom the Piqua road sold them on 25th February, 1854.

The Piqua road had no interest in the guarantee, and the defendants did not and were not to receive any consideration from said Neil & Dennison.

2. The plaintiffs were not *bona fide* holders of said bonds. They did not receive them in the usual course of business; they did take them with notice of facts to impeach their validity. The *bona fides* is not determined by the adequacy of the consideration, for a low price or a high price may be equally paid in good faith or in bad faith. Neither is the *bona fides* determined by the belief that the guarantees were valid, for such an honest belief, coupled with notice, actual or constructive, that they were not valid, would defeat the *bona fides*. Now the plaintiffs had such notice that the bonds were not valid. The guarantee was by one railroad company of the bonds of another railroad. This act requires a special legal authority, and purchasers were bound to see that it existed. The guarantee expressed it was in consequence of a resolution of the board, passed at such a time. This showed it was not an ordinary act, done by general authority, but an extraordinary act, done by special authority. The purchasers were bound to inquire whether such resolution was in pursuance of any legal authority. The simultaneous indorsement of three separate guarantees on the bonds of one railroad company by three several railroad companies was notice that it was a special act, and not in the ordinary and legitimate business of a railroad company. Inquiry would have shown that the indorsement was unauthorized. (See next point.)

The plaintiffs were allowed by the judge to recover the face of the coupons and interest; and yet it appears they paid only about seventy-five or eighty per cent. for them. See the testimony of Jas. Goodwin, commencing at fol. 597.

III. The guarantee was void, because neither the charter of the defendants, nor any law of the state of Ohio, nor any general rule of law authorized the defendants to indorse the bonds. See the charter of the company, at fol. 613 of the case, where the corporators are incorporated " for the purpose of constructing a railroad from the city of Cleveland, through the city of Columbus and the town of Wil-

mington, to the city of Cincinnati, and they are hereby invested with the powers and privileges which are by law incident to corporations of a similar character, and which are necessary to carry into effect the objects of the company." The act of revival conferred no additional powers.

The defendants, therefore, had no authority, by their charter, to indorse the bonds of another railroad company. Nor had they such right by any general principle of law. (*Bank of Genesee* agt. *The Patchin Bank*, 3 *Kern.* 309; *Morford* agt. *Farmers' Bank of Saratoga*, 26 *Barb.* 568; *Bridgeport Farmers' and Mechanics' Bank* agt. *The Empire Stone Dressing Co.* 10 *Ab. Pr. R. p.* 47; *Bridgeport City Bank* agt. *The Empire Stone Dressing Co.* 19 *How. P. R.* 51.)

But the power is claimed to be found in the acts set out at fol. 140, and seq., being an act passed March 3, 1851, and an act passed May 1, 1852. There are four provisions in these acts under which, if at all, the right of the defendants to guarantee the bonds of the Piqua company can be found. Those four are as follows: the first authorizes two railroad companies, in certain contingencies, to consolidate themselves into one corporation. That is not this case. The third authorizes any railroad, in certain cases, to purchase or lease all or any part of another road. That is not this case. The fourth authorizes any two or more railroads, whose lines are connected, to enter into any arrangement for their common benefit. This evidently refers to arrangements as to the management of the road, price of fare, time of running, number of trains, etc. It only remains to notice the second provision, which is in these words: "Any railroad company, heretofore or hereafter incorporated, may at any time, by means of subscription to the capital stock of any other company, or otherwise, aid such company in the construction of its railroad, *for the purpose* of forming a connection of said last mentioned road with the road owned by the company furnishing such aid." Now, this subscription was not made for such pur-

pose, but for the purpose of freeing another railroad from an injunction, and to enable it to change its gauge. These remarks relate to the act of 1851.

The act of 1852 is set forth at fol. 142. It is in substance the same.

IV. The bonds themselves were void under the laws of the state of Ohio, act of December 15th, 1852, which declares that no bonds issued by any railroad company of the state of Ohio shall be purchased by a director of the institution at less than par, and if so purchased shall be made null and void; and these very bonds of the Piqua company were purchased by Dennison when he was a director of said company. (*See the act at fol.* 734.)

The resolution authorizing the issue of the bonds was passed January 7th, 1854. Dennison was then a director, and was present at the meeting.

The written agreement of sale to Dennison was concluded on the 25th February, 1854. On the 14th February, 1854, Dennison was re-elected. He offered a resignation on March 3d, 1854, which was accepted, and the office declared vacant; but the laws of Ohio declare that directors shall continue such until their successors are elected and qualified. (*Act of February* 11*th*, 1848, §7.)

That notes and other commercial paper, when declared void by statute, are void even in the hands of *bona fide* holders. (*See Rost* agt. *Goddard,* 3 *McLean,* 102; *Bridge & al.* agt. *Hubbard,* 15 *Mass.* 96; *Sauerwein* agt. *Brunner,* 1 *Harris. & Gill,* 377; *Lucas* agt. *Wool,* 12 *S. & M.* 157; *Story on Prom. Notes,* §192; 3*d Kent's Com.* 87, 90; *Chitty on Contracts* "*of contracts void by statute.*")

V. If the bonds were void the guarantee was void. It is of the essence of a guarantee that there should be the valid obligation of a principal debtor. If there be no valid obligation, the guarantor or indorser is not bound. (*Warren* agt. *Crabtree,* 1 *Greenl.* 169; *Garther* agt. *F. and M. Bank of Georgetown.* 1 *Peters,* 37; *S. C.* 7 *Curtis,* 441; *Harrison* agt.

NEW YORK PRACTICE REPORTS. 231

Connecticut Mutual Life Ins. Co. agt. Cleveland, &c. R. R. Co.

*Hammell*, 5 *Taunt.* 780; *Swift et al.* agt. *Beers*, 3 *Denio*, 70; *Hayden* agt. *Davis*, 3 *McLean*, 277; *Bright et al.* agt. *Schuer*, *Ohio R.* 139, 141; *Robinson* agt. *Abell*, 17 *Ohio R.* 36, 43.) Neither was there any sufficient presentation for payment. If the place or office named had ceased, or become impracticable, a demand should at least have been made of the guarantor, and of the maker; and it would seem that notice of presentment and non-payment by the maker should have preceded a suit against the guarantor.

VI. As the bonds were not indorsed by the payee therein named, the plaintiffs cannot legally be the holders thereof. (*Avery* agt. *Latimer*, 14 *Ohio R.* 542, 544.)

VII. This court has no jurisdiction of this case. The suit is brought by a foreign corporation; the defendants are a foreign corporation; no suit can be brought against a foreign corporation, except in the following cases:

1st. When the plaintiff is a resident of this state.

2d. When the plaintiff is not a resident of this state, when the cause of action shall have arisen, or the subject of the action shall be situated within this state. (*Code of Procedure, S.* 427.)

Neither the cause of action arose here nor is the subject matter situated here.

The cause of action arose in Ohio, where the bonds and guarantee were made and executed, and where the parties to the contract resided.

There is no subject of this action; that clause relates to specific personal or real property situated here. If this action has any "subject," it is the defendant's contract. The object of the action was undoubtedly to get defendant's money in New York, but the subject of an action and the object of an action are distinct things. (*The Western Bank* agt. *The City of Columbus*, 7 *How.* 238; *Cantwell* agt. *Dubuque Western R. R. Co.* 17 *How. p.* 16; *Whitehead* agt. *Buffalo & Lake Huron R. R. Co.* 18 *How.* 218; *Campbell* agt. *Co-proprietors of Champ. & St. Lawrence R. R.* 18 *How.* 412.

See as to "subject matter of the action :" *Bank of Commerce* agt. *The Rutland & Wash. R. R. Co.* 10 *How.* 1.)

Where the court has not jurisdiction of the subject matter, no consent or appearance can confer jurisdiction, and an objection to jurisdiction can be taken at any stage of the action. (*Harriott* agt. *The N. J. R. R. & Trans. Co.* 2 *Hilton, p.* 262, *and cases there cited.*)

W. E. CURTIS, *for the respondents.*

I. The defendants' first exception is at fol. 137, where they make the objection that the bonds were not made under seal, and not indorsed by the payee. The defendants' exception at fol. 746 raises the same question. The court properly overruled the objection. The bonds are drawn payable in the city of New York to Elias Fassett, or holder, and are negotiable, passing by delivery, and have been so adjudged. (*Zabriskie* agt. *The Cleveland, Columbus & Cincinnati R. R. Co.* 23 *How. U. S. R.* 400.)

The bonds and coupons are payable in this state, and the cause of action arose here, and the law merchant applies to their transfer. (*The Conn. M. L. Ins. Co.* agt. *The C. C. & C. R. R. Co.* 23 *How. Pr. R.* 180.)

There is nothing in the laws or decisions of Ohio changing the law merchant as to the transfer of notes or securities payable to "*any person or holder.*" See the language of the bonds and coupons at fols. 129 and 123.

"It has been repeatedly held in Ohio that affixing seals to such an instrument does not vary the commercial characteristics of the paper." (*Bain* agt. *Wilson*, 10 *Ohio State R.* 19 ; *Bank of St. Clairsville* agt. *Smith*, 5 *Ohio*, 222.)

II. The second exception of the defendants is to the ruling of the judge, at fol. 741, that the plaintiffs are entitled to recover interest upon the coupons. The judge did not err. The coupons are negotiable promises to pay a certain sum of money at a certain time to the holder, so

made as to be cut off and be circulated independently of the bonds. If not paid when due, the general rule as to interest applies to them the same as to any other negotiable security. It is a contract between the maker and the holder, and may be sued without producing the bond. (*Comm'rs of Knox Co.* agt. *Aspinwall*, 21 *How. U. S. R.* 539; *Redfield on Railways*, § 239, *and cases cited in note ; Hollingsworth* agt. *Detroit*, 3 *McLean*, 472; *County of Beaver* agt. *Armstrong, Legal Intelligencer, vol.* 20, *p.* 44; *Watkinson* agt. *Root*, 4 *Hammond's Ohio R.* 373; *Forbes* agt. *Canfield*, 3 *id.* 18; *Pierce and another, executors* agt. *Rowe*, 1 *Adams' N. H. R.* 179; 2 *Curwen's Ohio Statutes*, 1407, 1569; 3 *id.* 2317.)

III. The third exception of the defendants is at fol. 743, where the judge declined to instruct the jury that the defendants, being indorsers or guarantors without consideration and for accommodation, are only liable to *bona fide* holders for value received, to the extent of the value paid, and the defendants, showing they are mere accommodation indorsers, the burden of proving *bona fides* and value is on the plaintiffs.

The judge did not err. The consideration is expressed on the face of the guaranty. (*Miller* agt. *Cook*, 22 *How. Pr. R.* 66.)

If it is admissible to inquire beyond the face of the instrument, then the plaintiffs urge that there was no evidence in the case showing that the defendants were indorsers or guarantors without consideration, but, on the contrary, showing that they were guarantors for a good consideration.

The only evidence, independent of the face of the paper, in respect to the consideration for the guaranty, is to be found in the printed record in the case of *Zabriskie* agt. *The C. C. & C. R. R. Co.* (*reported* 23 *How. U. S. R.* 381), and in which it clearly appears that there was a good and valuable consideration, viz : the obtaining control, by the

234        NEW YORK PRACTICE REPORTS.

Connecticut Mutual Life Ins. Co. agt. Cleveland, &c. R. R. Co.

defendants, of various beneficial interests, including a change of gauge and railroad connection, to increase their business. (*See opinion on this point*, 23 *How.* 399.)

Even if there had been evidence to warrant the judge in charging as requested, that the guaranty was without consideration and for accommodation, still there is no foundation for the limitation of the defendants' liabilities as claimed, and if there was, it must apply to an action on the bonds and not to one on the coupons, as they are of themselves an independent engagement and negotiable.

The laws of Ohio, in relation to the issue of these bonds, expressly negative any such limitation of liability. The statutes of Ohio provide, that in case of sales of bonds by directors at a discount, " such sale shall be as valid in every respect, and such securities as binding for the respective amounts thereof, as if they were sold at their par value." (*Swan's Ohio Stat. pp.* 200 *and* 240.) ·

The supreme court of Ohio held, on appeal, that these very bonds were valid securities, and held that an order requiring the bondholders to state the amounts paid for the bonds was erroneous. (*Cox* agt. *Columbus & Piqua R. R. Co.* 10 *Ohio State R.* 375, 395 *to* 399, *and* 410.)

There was no attempt, on the part of the defendants, to show any notice to the plaintiffs of any of the matters set up in the answer.

IV. The fourth exception of the defendants is at fol. 744 of the case. The judge very properly declined to instruct the jury, as requested, that the guaranty of the defendants was unauthorized and unlawful. He followed the decision of the supreme court in the case of *Zabriskie against the defendants* (23 *How.* 381), where the same questions in respect to these bonds were considered and decided, and upon the same evidence.

The statutes of Ohio authorized the making of the guaranty by the defendants. (2 *Curwen R. S. p.* 1657, § 4 ; 3 *id. p.* 1884, § 24.)

These sections of Ohio law are also at pages 39 and 40 of case. (*Zabriskie* agt. *C. C. & C. R. R. Co.* 23 *How. U. S. R.* 395 *to* 399.)

The plea of *ultra vires*, according to its just meaning, imports, not that the corporation could not and did not in fact make the unauthorized contract, but that it ought not to have made it. Such a defence therefore necessarily rests upon the violation of trust or duty towards the shareholders, and it is not to be entertained where its allowance will do a greater wrong to innocent third parties.

The acquiescence of the shareholders in the abuse will prevent the interposition of such a plea. (*Bissell* agt. *The Michigan Southern and Northern Indiana R. R. Co's,* 22 *N. Y. R.* 258 ; *Society for Savings* agt. *New London,* 1 [*N. S.*] *Am. Law Reg.* 241.)

V. The fifth exception of the defendants is at fol. 745. The judge did not err in declining to instruct the jury as requested, that the plaintiffs could not recover because the bonds were void under the act of the state of Ohio, Dec. 15th, 1852, in respect to annulling bonds purchased by a director of the institution issuing them, at less than par, and also that Dennison was in law a director when he purchased them.

The supreme court of Ohio have decided that these identical bonds are valid securities, and upon which the holders are entitled to recover the full amount and interest, without reference to what they paid for them. (*Coe* agt. *Columbus & Piqua R. R. Co.* 10 *Ohio State R.* 395 *to* 399, *and* 410.)

The U. S. supreme court say : " In deciding upon this contract, we deem it unimportant to settle whether Dennison was a director of the Piqua company the 25th of Feb., 1854, when he signed the contract with the committee of the Piqua board of directors." (*Zabriskie* agt. *C. C. & C. R. R. Co.* 23 *How. U. S. R.* 399.)

The testimony shows Dennison was not a director of the Piqua company.

VI. The sixth exception of the defendants is at fol. 746. The court did not err in declining to instruct the jury that if the bonds were void the guaranty was void.

1. The U. S. supreme court held, that in deciding upon the validity of the guaranty it was unimportant to settle whether the bonds of the Piqua company were null and void. " The contract of the guarantors indorsing the bond is a distinct contract, and may impose an obligation upon them, independently of the Piqua company." (*Zabriskie* agt. *C. C. & C. R. R. Co.* 23 *How. U. S. R.* 399.)

The indorser is liable, though the maker's name is a forgery, or the note for any other reason is void. (*Edwards on Bills, p.* 289.)

2. The guarantor may be held, although no suit could be maintained upon the original debt, and such guaranty may have been required for the very reason that the original debt could not be enforced at law, as where the guarantor promises to be responsible for goods to be supplied to a married woman, or to be sold to an infant not being necessaries. (1 *Parsons on Contracts,* 494, *and cases cited in note; Mann* agt. *Eckford,* 15 *Wend.* 502.)

3. The defendants' objection does not extend to the coupons, but is limited to the bonds only.

VII. The seventh and last exception of the defendants is a repetition of the question raised by his first exception, and has been considered under the first point.

VIII. The judgment appealed from should be affirmed, with costs to the plaintiff.

By the court, SUTHERLAND, Justice. The bonds are payable in the city of New York, to Elias Fassett, or *holder*. They are negotiable, passing by delivery, and would have been had they been under seal. Their negotiability was

assumed if not decided in *Zabriskie* agt. *The Cleveland, Columbus & Cincinnati R. R. Co.* (23 *How. U. S. R.* 400.)

Similar bonds have repeatedly been held by the courts to be negotiable. It was so held or assumed recently by the court of appeals of this state, in an action on one or more Harlem railroad bonds under seal, I believe. (*See also Redfield on Rail.* § 239, *and cases cited in note.*)

It has been repeatedly held in Ohio, that affixing a seal to such an instrument does not affect its negotiability. (*See Bain* agt. *Wilson,* 10 *Ohio S. R.* 19; *Bank of St. Clairsville* agt. *Smith,* 5 *Ohio,* 222.) The English decisions are, I think, to the same effect. This point is raised by the defendant's first exception when the case was submitted to the jury. Neither exception was well taken.

In my opinion the judge was right in permitting the plaintiffs to recover interest on the coupons. This point is presented by the defendants' second exception. The coupons are negotiable promises to pay a certain sum of money on a certain day to the holder, so made as to be cut off and circulated independently of the bond. If not paid when due I think interest should be allowed by way of damages for the delay of payment. They do not contain any express promise to pay interest on the interest, and if they did I think interest would or should be allowed, not by force of the promise, but as compensation for the delay of payment by way of damages. The general rule is that when there is a written contract to pay money on a day, and not a place fixed, and the contract is broken, interest is allowed. (*Williams* agt. *Sherman,* 7 *Wend.* 109; *Still* agt. *Hall,* 20 *id.* 51, 52; *Reid* agt. *Rensselaer Glass Co.* 3 *Cowen,* 436; *S. C. in error,* 5 *id.* 587.)

The chancery cases in this state are undoubtedly to the effect that compound interest can only be recovered upon a written agreement to pay it, made *after* the interest upon which it operates has fallen due. (*State of Connecticut* agt. *Jackson,* 1 *John. Ch.* 13; *Van Benschoten* agt. *Lawson,* 6 *John.*

*Ch.* 313; *Mowry* agt. *Bishop*, 5 *Paige*, 98; *Quackenbush* agt. *Leonard*, 9 *id.* 334; *Toll* agt. *Hiller*, 11 *id.* 228.)

In *State of Connecticut* agt. *Jackson* Chancellor KENT says: " Even an original agreement at the time of the loan or con- tract, that if interest be not paid at the end of the year, it shall be deemed .principal, and carry interest, will not be recognized as valid : such a provision would not amount to usury (*Le Grange* agt. *Hamilton*, 4 *Term R.* 613; 2 *H. Black.* 144), but this court certainly, and *perhaps* a court of law, would not give effect to such a provision."

In *Van Benschoten* agt. *Lawson* (*supra*) the chancellor held that the agreement, though made *after* the interest had fallen due, must be prospective in its operation, as that the interest then *due* and payable should carry interest there- after.

· In *Mowry* agt. *Bishop*, (5 *Paige, supra,*) Chancellor WAL- WORTH held that an agreement to pay interest on *arrears* of interest, which had already become due, *was* valid, and that if compound interest is voluntarily paid, it could not be recovered back; that the moral obligation of the debtor to make the usual remuneration for the loss of interest sustained by the creditor, was a sufficient consideration to support a subsequent agreement in writing to pay interest on such arrears of interest.

I have some difficulty in seeing if such moral obligation is sufficient to support such subsequent written promise, why it was not right to allow the plaintiffs in the principal case interest upon their coupons without any promise.

In *Mowry* agt. *Bishop* the chancellor said that the prin- ciple that an agreement to pay interest upon interest to accrue after the making of the agreement, cannot legally be enforced, was adopted merely " as a rule of public policy to prevent an accumulation of compound interest in favor of *negligent* creditors who do not call for the payment of their interest when due."

The reason or ground of the general rule that interest

upon interest cannot be recovered as thus stated, certainly does not apply to the principal case, and should not have prevented a recovery of the interest on their coupons. There is no danger of railroad creditors being negligent in presenting their coupons for payment ; though they may run other risks, railroad corporations certainly do not need protection from want of diligence on the part of their creditors.

In *Van Benschoten* agt. *Lawson* (*supra*) Chancellor KENT said that agreements to pay interest on interest to accrue would not be enforced because they were oppressive.

I repeat, certainly there is no danger of railroad corporations being oppressed from want of diligence on the part of their coupon creditors.

As to how far the general rule or principle before adverted to as established by the chancery cases in this state has been recognized by the courts of law of this state, see *Kellogg* agt. *Hickok*, 1 *Wend.* 521; *Jackson* agt. *Campbell*, 5 *Paige*, 571; *Boyer* agt. *Pack*, 2 *Denio*, 107; *Van Rensselaer* agt. *Jones*, 2 *Barb.* 666, 667; *Forman* agt. *Forman*, 17 *How. Pr. R.* 255; *Henderson* agt. *Hamilton*, 1 *Hall*, (*N. Y. Superior Court*) 314.

In *Van Rensselaer* agt. *Jones*, Judge WILLARD appeared to think it by no means clear that the cases in this state would prevent a recovery of interest on interest in a case like the principal case.

There is no doubt that in several of the states the plaintiffs would have been permitted by the court to recover interest.   (*See Catlin* agt. *Lyman*, 16 *Vesey*, 45; *Greenleaf* agt. *Kellogg*, 2 *Mass.* 548; *Hastings* agt. *Wiswall*, 8 *Mass.* 455; *Watkinson* agt. *Root*, 4 *Hammond Ohio R.* 373; *Pierce* agt. *Rowe*, 1 *Adams N. H. R.* 179; *Hollingsworth* agt. *Detroit*, 3 *McLean*, 472.)

Upon the whole I can find no good reason nor controlling authority for saying that the plaintiffs should not have recovered interest on their coupons.

From the transaction I infer that the Piqua company expected to pay interest on their coupons if they were not paid when due.

The judge was right in declining to instruct the jury, as requested by the defendants, that the defendants, being indorsers or guarantors without consideration and for accommodation, are only liable to *bona fide* holders for value received to the extent of the value paid, and the defendants showing that they are mere accommodation indorsers, the burden of proving *bona fides* and values is on the plaintiffs. The defendants were not accommodation indorsers or guarantors. There was a sufficient consideration expressed on the face of the guarantees. The words " value received" imported a sufficient consideration. (*Miller* agt. *Cook*, 21 *How. Pr. R.* 66 ; *Douglass* agt. *Howland*, 24 *Wend.* 35.) I think, too, the case shows a sufficient consideration for the guarantees outside of them. A railroad corporation must be presumed to be created, not only for public convenience, but also for private profit.

The arrangement which was entered into between the defendants and the other companies, of which the guarantees were a part, was entered into for the purpose of securing uniform gauge of the connecting roads, and then to increase their business and profits.

The presumption is that the defendants have received the anticipated advantages from the arrangement. I think, therefore, that the defendants' third exception was not well taken.

In my opinion, the judge was also right in declining to instruct the jury as requested, that the guarantees were unauthorized and unlawful. No doubt the plea of *ultra vires* raised the question of corporate powers of the defendants to make the guarantees as between the corporation and the state of Ohio, and not merely the question as between the corporation and its shareholders, whether the making of the guarantees was a breach of trust.

A corporation is the mere creation of law, and cannot act at all without law. A contract made by it without authority is void, even in the hands of a *bona fide* holder for *value*. Its legal capacity to contract cannot be enlarged by estoppel. But I think the defendants were authorized by the sections of the general railroad laws of Ohio, inserted in the case, to enter into the arrangement with the other companies, and to make the guarantees as a part thereof. These sections declare that " any railroad company heretofore or hereafter incorporated, may at any time, by means of subscription to the capital stock of any other company, or *otherwise*, aid such company in the construction of its railroad, for the purpose of forming a connection of said last mentioned road with the road owned by the company furnishing such aid," &c. There is another clause of these sections which authorizes any two or more, whose lines are connected, to enter into any arrangement for their common benefit.

The counsel for the defendants insists that this last provision evidently refers to arrangements as to the management of the road, price of fare, time of running, number of trains, &c. But I do not see why this limited construction should be given the provision, particularly as against the plaintiffs, who are *bona fide* holders for value, there being nothing in the case showing that they had notice of any of the defences set up in the answer. The language is broad enough to cover the arrangement which the defendants entered into with the other companies, and the guarantees as a part of it.

Perhaps this question of power may be said to have been decided in *Zabriskie* agt. *Cleveland, Columbus & Cincinnati Railroad Co.* (23 *How. U. S. R. supra*), although that action was brought by Zabriskie as a shareholder.

It is not necessary to inquire or decide whether the acts of the defendants were authorized or ratified by a vote of the stockholders in accordance with the provisoes of the

said sections of the Ohio general statutes, if the defendants had the general power to make the guarantees; for these provisoes were intended for the protection of the shareholders, and relate rather to the mode or manner of the execution of the power; and the plaintiffs had a right to presume that the defendants had done their duty, and had proceeded regularly in the execution of the power. (*See Commissioners of Knox Co. Indiana* agt. *Aspinwall*, 21 *How. U. S. R. opinion p.* 545 ; 6 *Ellis & Black. p.* 337 ; *The Royal British Bank* agt. *Tarquand; and Zabriskie against the same defendants*, 23 *U. S. R. supra.*)

This doctrine does not at all interfere with the principle of the limitation of the powers of corporations and its consequences, before stated.

Third parties dealing with a corporation are bound to know the law; that is, they are bound to take notice of the extent of its powers; but they have a right to assume, in the absence of anything suggesting inquiry, that it has proceeded regularly in the execution of its powers.

I think, therefore, the defendants' fourth exception was not well taken.

I think the judge was also right in declining to instruct the jury, as requested by defendants, that the plaintiffs could not recover, because the bonds were void under the Ohio act of Dec. 15th, 1852, declaring that no director of a railroad company should purchase any of the bonds of any railroad of which he may be a director, for less than the par value thereof, and that all such bonds, &c. so purchased should be void.

The supreme court of Ohio have decided that these bonds were valid securities, and upon which the holders are entitled to recover the full amount of principal and interest, without reference to the amount paid for them. (*Coe* agt. *Columbus & Piqua R. R. Co.* 10 *Ohio State R.* 395, 399 *and* 410.) In *Zabriskie against these same defendants* (23 *How. U. S. R. supra*), the U. S. supreme court says :

" In deciding upon this contract, we deem it unimportant to settle whether Dennison was a director of the Piqua company on the 25th Feb., 1854, when he signed the contract with the committee of the Piqua board of directors."

I doubt, too, whether Dennison was a director on the 25th Feb., 1854, within the meaning and intent of the act of Dec. 15th, 1852, although he may have been within the meaning of the Ohio act of Feb. 11th, 1848, declaring that directors shall continue such until their successors are elected and qualified.

I think, therefore, the defendants' fifth exception was not well taken.

Neither do I think that the defendants' sixth exception was well taken.

The judge declined to instruct the jury that if the bonds were void the guarantees were void. In the case of Zabriskie, the U. S. supreme court held that it was not necessary to settle whether the bonds of the Piqua company were void. The court said : " The contract of the guarantors, indorsing the bonds, is a distinct contract, and may impose any obligation upon them independently of the Piqua company."

An indorser may be liable, though the maker's name is a forgery. (*Herrick* agt. *Whitney*, 15 *Johns.* 240 ; *Shaver* agt. *Ehle*, 16 *Johns.* 201 ; *See also* 1 *Parsons on Contracts*, 491, *and cases cited in notes.*)

It was decided by the general term, in this action—the bonds and coupons being payable here—that the cause of action arose here, and that this court had jurisdiction, though both parties were foreign corporations. (*The Conn. Mu. Ins. Co.* agt. *The C. C. & C. R. R. Co.* 23 *How. Pr. R.* 180.)

My conclusion is, that judgment should be affirmed, with costs.